UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D%%ANN M%%OFFETT,

               Plaintiff,               Case No. 06-12157

                                                     D%%ISTRICT J%%UDGE D%%ENISE P%%AGE H%%OOD
                                                     M%%AGISTRATE J%%UDGE  S%%TEVEN D. P%%EPE

vs.

J%%O A%%NNE B%%ARNHART
C%%OMMISSIONER OF S%%OCIAL S%%ECURITY,

               Defendant.

_____/

**REPORT AND RECOMMENDATION**

**I.    BACKGROUND**

       Dyann Moffett brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) to challenge a final decision of the Commissioner denying her application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act.  Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the following reasons, **I%%T I%%S R%%ECOMMENDED** that Defendant's motion be **D%%ENIED** and Plaintiff's motion be **G%%RANTED IN PART** and this case remanded for further proceedings consistent with this Report and Recommendation.

**A.    Procedural History**

       Plaintiff applied for SSI in an application dated February 7, 2003 (R. 53-55), alleging that

she became disabled August 10, 1996, as a result of depression (R. 53, 70).[1]  After Plaintiff's claim was initially denied (R. 36-39), a hearing was held on April 12, 2005, before Administrative Law Judge Regina Sobrino (ALJ) (R. 253-276).  Plaintiff was represented by her current attorney, Mikel E. Lupisella, and Vocational Expert Timothy Shaner (VE) also testified (R. 271-274).

In a July 27, 2005, decision, ALJ Sobrino concluded that Plaintiff was not under a disability as defined by the Act because she remained capable of performing a significant number of jobs in the economy (R. 25-30).  On November 9, 2005, the Appeals Council denied Plaintiff's request for review (R. 4-6).

**B.      Background Facts**

   **1.      *Hearing Testimony and Statements***

Plaintiff was 48 years old at the time of the ALJ's decision (R. 19, 257).  She received her General Equivalency Diploma ("GED"), and had taken a few courses at Baker College (R. 76, 257, 266).  Plaintiff maintained a household for herself, her two daughters, 3 grand-nephews and a grand-niece (R. 257, 261).

Plaintiff last worked full-time in 1992 or 1993.[2]  She testified that she is unable to work

---

[1] Although Plaintiff's application for SSI and her brief in support of her motion for summary judgement lists her alleged onset date of disability as August 10, 1996 (R. 53; Dkt. #8, p. 5), the ALJ indicates in her decision that Plaintiff alleged she became disabled on April 1, 2001 (R. 26).  In addition, Plaintiff submitted an April 12, 2005, "Change of Amended Onset Date" form, which requests to amend her onset date from August 10, 1996 to January 29, 2003 (R. 63).  For SSI purposes, Plaintiff's onset date would be the protective filing date of her application, January 29, 2003.

[2] According to the ALJ, Plaintiff later indicated that she most recently worked in or around 2002 in a nursing home, but was let go after 3 years because of her criminal record (R. 27).

because she is "tired a lot" (R. 258). Plaintiff also indicated that she had difficulty standing, sitting and walking. She could stand approximately 15-20 minutes before she needed to sit down and could sit 15-20 minutes before she needed to stand up due to the pressure on her right leg and thigh (R. 259). Plaintiff was able to climb the stairs in her home, but needed to shift her weight to her left side and experienced some pain (R. 260). Further, Plaintiff experienced shortness of breath and pain when she bent at the waist or bent her knees and crouched down (R. 259). Plaintiff reported no difficulty using her hands, lifting objects, or reaching over her head or reaching out.

Plaintiff saw a psychiatrist for approximately two or three months on a bi-weekly basis, but stopped going because "a lady at the treatment center had got sick and she wasn't there, so I stopped going and I never called back" (R. 260, 267).[3] She also had difficulty with her memory and her ability to focus (R. 265). Plaintiff took Elavil, Avandamet for diabetes, Fioricet for headaches, and Prozac for depression (R. 260-261). Plaintiff indicated that she suffered no side effects from her medication (R. 261). She received treatment for substance abuse, but indicated that she was not receiving treatment or experiencing any problems at the time of the hearing (R. 264).

Plaintiff did not do any chores, take out the trash, or do any yard work, but occasionally shopped for groceries and had no trouble bathing (R. 261-262). She belonged to a church, which she went to "sometimes twice a week" (R. 262). Plaintiff listed fishing as a hobby, and reported

---

[3] The ALJ indicated at the hearing that there was no medical evidence in the record since early 2003 and the only treating source was her family doctor (R. 268). Plaintiff's attorney, Mr. Lupisella, stated that they had difficulty receiving medical records, but would try to get them for the administrative record, which the ALJ agreed to leave open for 30 days.

last fishing approximately one year prior to the hearing. She drove her daughter to and from school, but otherwise did not drive often. Plaintiff did not go to stores because she "used to have a history of stealing, larceny, and so I try not to go to stores" (R. 265). She also experienced anxiety when she was around crowds or groups.

In response to her attorney's question, Plaintiff indicated that in a typical day she awoke at about ten in the morning to take her medication (R. 264). After taking her medication, she would get back into bed and wait for her children to come home. Plaintiff would get up for a few hours when they came home, but would then get back into bed (R. 265). Occasionally, Plaintiff would take naps throughout the day for 15-20 minutes.

### 2.    *Medical Evidence*

Plaintiff sought psychological counseling for depression from the DOT Caring Center in February 2003 (R. 172-209).

Psychologist Matthew Dickson, Ph.D., examined Plaintiff on April 14, 2003, and diagnosed major depressive disorder and borderline intellectual functioning (R. 144-48). On the WAIS-III, Plaintiff obtained a verbal IQ score of 75, a performance IQ score of 87, and a full scale IQ score of 79 (R. 149-151). WRAT-III scores showed that Plaintiff read at a 8th grade level and had math skills at the 5th grade level. In addition, Dr. Dickson opined that the results of Plaintiff's Thematic Appercetion Test ("TAT") were brief and referenced feelings of tiredness and frustration (R. 152). Her TAT characters were minimally connected and echoed Plaintiff's own feelings of sadness and dissatisfaction with life. Dyann's Draw-A-Person ("DAP") projective test suggested immaturity, reduced energy, regression and dependency.

Psychiatrist Ashok Kaul, M.D., reviewed the evidence of record in May 2003 and

concluded that Plaintiff had moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace (R. 163).  Dr. Kaul concluded, however, that Plaintiff was able to understand, remember and carry out simple instructions (R. 169).  She experienced moderate limitations in her ability to remember and carry out detailed instructions, maintain concentration and pace, interact with the public, and respond to changes in her work setting.  Nevertheless, she was capable of unskilled work given appropriate breaks and adequate pacing.

Dr. Dickson saw Plaintiff again in May 2005 for another consultative examination (R. 226-29).  He diagnosed moderate major depressive disorder, a history of polysubstance dependence with no use since 1998, and borderline intellectual functioning, and gave a GAF score of 52.[4]  Personality testing yielded invalid results suggesting that Plaintiff was "faking bad."  Dr. Dickson opined that Plaintiff's ability to understand, remember and carry out instructions were not impaired, but he considered her moderately impaired in her ability to interact appropriately with the general public and to respond appropriately to work pressures in a usual work setting (R. 232-33).

---

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *See id.* at 32.  A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id*.  A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id*.  A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id*.

Medical Evidence Submitted After the July 27, 2005, decision to the Appeals Council[5]

Plaintiff submitted medical records from Ayman Haidar, M.D., dated September 20, 2004, through February 16, 2005 (R. 235-252). The records document Dr. Haidar's diagnosis of various ailments, such as acute bronchitis (R. 236), bilateral knee pain (R. 238) and depression (R. 245).

**3.     *Vocational Evidence***

VE Shaner described Plaintiff's past relevant full time positions by exertional and skill levels. The position of nursing assistant was heavy, semi-skilled work (R. 272). Both the job as a fast food worker and machine tender were light, unskilled work.

ALJ Sobrino posed the following hypothetical to VE Shaner: an individual of the same age, education, and work experience as the Plaintiff with eighth grade reading skills and with fifth grade arithmetic skills, and with the following limitations: the individual is limited to work that is simple, routine, and low stress; she can tolerate superficial contact with coworkers and supervisors, but should not be required to deal with the general public.

VE Shaner stated that there were jobs at all exertional levels that were compatible with these limitations and vocational factors. At the medium exertional level in the region, the VE

---

[5] Because this evidence was not before the ALJ when he rendered the final decision of the Commissioner, it cannot be considered for substantial evidence review. *See Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). The only purpose for which this Court can consider this additional evidence is to determine whether this case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cotton v. Secretary of Health and Human Services*, 2 F.3d 692, 695-96 (6th Cir. 1993). This court may remand the case if the additional evidence is new and material, and if there was good cause for failure to incorporate the additional evidence into the record at a prior hearing. 42 U.S.C. § 405(g) (sentence six); *See Wyatt*, 974 F.2d at 685; *Casey v Secretary of Health and Human Services*, 987 F.2d 1130, 1233 (6th Cir. 1993).

indicated there were 6,700 groundskeeper jobs and 12,000 cleaner jobs. At the light exertional level in the region, the VE indicated 13,000 inspector jobs and 15,000 cleaner jobs. At the sedentary level, there were 1,800 inspector jobs and 13,000 assembler jobs (R. 273). All of these jobs required the ability to do the work eight hours a day, five days a week, or on some kind of equivalent work schedule.

Plaintiff's counsel then asked the VE the consider "if 30 percent of the time a person were unable to complete a normal work day and work week without interruptions from psychologically based symptoms, and unable to perform at a consistent pace without an unreasonable number and length of rest periods" (R. 273). VE Shaner responded that such a limitation would preclude all competitive employment.

### 4. *ALJ Sobrino's Decision*

ALJ Sobrino found that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of her decision and had not engaged in substantial gainful activity at any material time (R. 30). Further ALJ Sobrino found that Plaintiff had severe depression, borderline intellectual functioning and a history of substance dependence (in sustained remission) (R. 29). The ALJ also determined that the medical evidence documented the existence of impairments that can be reasonably be expected to produce depression and decreased tolerance for detailed or complex tasks. Yet, Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of any impairment listed in Appendix 1, Subpart P, Part 404 (the "Listing") and she found that her allegations of disabling symptoms are not fully substantiated by the objective medical or other evidence.

ALJ Sobrino found Plaintiff's allegations of pain and dysfunction were not fully

corroborated by the objective medical evidence and were not consistent with Plaintiff's ordinary activities (R. 27). Although Plaintiff testified that she had leg pain that limited her activities, the medical record did not document that she had a physical impairment that resulted in any limitations. Plaintiff's diabetes were also adequately controlled without insulin. The ALJ noted that Plaintiff's daily activity report from February 2005 indicated that Plaintiff's activities included taking her daughter to school, interacting with the children in the household and cooking for them, watching television, reading and shopping. Plaintiff also went to church and went fishing.

The ALJ also evaluated Plaintiff's alleged mental limitations (R. 28). She noted that although Plaintiff had a history of polysubstance abuse, according to the record this condition had been in sustained remission since 1998. Further, the ALJ found that the record supported the conclusion that Plaintiff's activities of daily living are only mildly impaired and her ability to maintain social functioning is mildly to moderately impaired. Plaintiff maintained a household for herself, her two daughters, 3 grand-nephews and a grand-niece. She did no household chores, but attended church as often as twice a week, regularly drove her daughter to school the preceding year, and shopped on occasion. Although there was evidence of moderate impairment of functioning in the area of concentration, persistence or pace, Plaintiff had not had extended episodes of decompensation. Moreover, she did not have a disease process that results in such a marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause decompensation.

ALJ Sobrino concluded that Plaintiff's limitations preclude her from performing her past relevant work and that she does not have any transferable skills that can be used for work within

her residual functional capacity.  He found Plaintiff had the residual functional capacity to perform simple, routine, low stress work and could tolerate superficial contact with co-workers and supervisors, but she should not perform work that involves dealing with the general public.  He concluded Plaintiff could perform a significant range of jobs that exist in the regional and national economies, including such work as identified by VE Shaner (R. 30).

**II.     ANALYSIS**

**A.     <u>Standards Of Review</u>**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry their burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than their past work, the testimony must be given in response to a hypothetical question that accurately

describes Plaintiff in all significant, relevant respects.[6] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists that the Plaintiff can perform.

B. **Factual Analysis**

Plaintiff raises the following challenge to the Commissioner's decision: ALJ Sobrino did not present the VE with an accurate hypothetical question or construct a proper RFC because she failed to sufficiently account for Plaintiff's "moderate" difficulties in maintaining concentration, persistence and pace.

In assessing the functional impact of Plaintiff's depression, the ALJ found that Plaintiff had "moderate" limitations in concentration, persistence or pace (R. 28).[7] In light of this finding,

---

[6] *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

[7] An RFC Assessment form provided by a non-examining medical consultant, Dr. Kaul, was submitted as evidence to the ALJ (R. 167-169). Based upon a review of Plaintiff's medical records, the medical consultant concluded that Plaintiff was moderately limited in several areas, the most important of those areas in this instance being in difficulties in maintaining concentration, persistence and pace (R. 167)

The consultant's report is never discussed in the ALJ's written opinion and it appears that the ALJ choose to give little weight to the consultant's findings because he did not have the benefit of evidence received into the record after May 2003 when the two psychiatric reports were completed (R. 28). The ALJ cites exhibit 5F, the Psychiatric Review Technique Form, and not exhibit 6F, the RFC-Mental, in conjunction with her decision to discredit the consultant's report. 20 CFR §404.1527(f) requires an ALJ to consider the consultant's findings of fact about the nature and severity of an individual's impairment(s) as opinions of non-examining experts. Social Security Ruling 98-8p states that "the adjudicator must explain how any material

Plaintiff contends that the ALJ's RFC finding that Plaintiff was limited to simple, routine, low stress work that includes superficial contact with co-workers and supervisors, but does not involve dealing with the general public did not adequately accommodate her concentration limitations. Plaintiff argues that this finding does not constitute a sufficiently "complete and accurate assessment"of the functional consequences of her impairment and that based on *Bankston v. Commissioner of Soc. Sec.*, 127 F. Supp.2d 820 (E.D. Mich. 2000), a "moderate" limitation equates with at least an inability to concentrate thirty percent of the time, thereby requiring a finding of disability (Dkt. #8, p. 16).

Under the previously used evaluative scale, deficiencies in concentration, and other areas, were rated on a five-level range of frequency: never, seldom, often, frequent and constant. C.F.R. 404.1520a(c)(4) has since been amended to encompass a five-level scale based on severity rather than frequency of the limitation. The current scale rates severity as none, mild, moderate, marked and extreme. Thus, Plaintiff contends a finding of "moderately limited" is equivalent to "often," and under *Bankston*, such a limitation necessarily requires a finding that a claimant is disabled.

In *Bankston*, the Court noted that it was reasonable to conclude under the regulations "that a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." *Id.* at 826. Yet, the Sixth Circuit has since held that an ALJ's failure to include in

---

inconsistency or ambiguities of the evidence of the case record were considered and resolved." SSR 96-8p further provides that the RFC assessment must "always consider and address medical source opinions," and if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. *Id.* On remand, the ALJ is directed to give proper treatment to the consultant's report or more fully explain which reports she is discrediting and for what reasons.

a hypothetical question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment.  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  In *Smith*, the ALJ marked on the PRTF that Smith "often" suffered deficiencies of concentration, persistence or pace, but did not include that finding in the hypothetical question to the VE.  Smith, relying on cases similar to *Bankston*, argued for a remand based on that omission.  The Sixth Circuit, without citing *Bankston,* held that the hypothetical question asked by the ALJ was adequate.

The court noted that while the ALJ checked a single box for "often" in a 1-5 rating scale on the PRTF,

> the ALJ went beyond this simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment . . . . In particular, the ALJ relied on the testimony of four physicians who characterized Smith's concentration problems as minimal or negligible.  The ALJ then translated Smith's condition into the only concrete restrictions available to him–examining psychiatrist Schweid's recommended restrictions against quotas, complexity, stress, etc.– and duly incorporated them into his hypothetical to the vocational expert.

*Id.* at 379.[8]

The Court distinguished several unpublished district court cases similar to *Bankston* because the ALJ's in those cases did not include in the hypothetical question the finding that the claimant "often" had difficulty concentrating, nor did they otherwise account for such a limitation.  *Id.*  Thus, when the ALJ makes a finding that the claimant "often" has problems with

---

[8] It seemed significant to the court in *Smith* that the ALJ had noted there were four physicians who characterized Smith's concentration problems as minimal or negligible.  In this case there is less weighty counter-evidence concerning the degree of concentration limitations than in *Smith*.

concentration or has moderate limitations of concentration, but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's concentration limitations.

A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms. While the ALJ is not required provide a verbatim recitation of the medical findings, the hypothetical question must adequately reflect those limitations. One court has held that a reference merely to "unskilled sedentary work" in a hypothetical question is insufficient to describe and accommodate concentration deficiencies. *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996); *McGuire v. Apfel*, 1999 WL 426035, at *15 (D. Ore. 1999). This Court in *Bielat v. Comm'r of Soc. Sec.*, No. 02-70791 (E.D. Mich. Apr. 4, 2003) (quoting *Andrews v. Comm'r of Soc. Sec.*, No. 00-75522 (E.D. Mich. Dec. 18, 2001) and citing *Thomczek v. Chater*, 1996 WL 426247 (E.D. Mich. 1996), has held that a hypothetical question including "unskilled sedentary work" plus the limitation of "jobs low at the emotional stress level" is not sufficient to accommodate a finding of a "marked" limitation in ability to concentrate or persist at tasks. *See, Andrews v. Comm'r of Soc. Sec'y,* No 00-75552 (E.D. Mich, Dec.18, 2001), finding that "difficulties in concentration" in a hypothetical question was insufficient to describe someone who has "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner . . . often." *See also, Walker v Barnhart*, 258 F.Supp.2d 293 (E.D. Mich. 2003), holding that the ALJ's hypothetical question to the VE that the claimant could perform only simple, unskilled work did not necessarily take into account

the non-exertional limitations imposed by Plaintiff's depressive disorder. [9]

*Smith* found that a hypothetical question that took into consideration "quotas, complexity, stress" was adequate in a case where the record also contained four physicians who characterized Smith's concentration problems as minimal or negligible. Here Plaintiff was found to have "moderate limitations with respect to concentration, persistence or pace." The hypothetical question limited the worker to "simple, routine, low stress work" with the additional limitations focusing on interactions with the public (R. 50).

There seem to be two components to having problems in concentration - whether characterized as being "often" or "moderate." One deals with the frequency of how often one cannot concentrate. The other deals with the level of sophistication or intensity of the work that can be done with the concentration limitation. The hypothetical question asked by the ALJ encompasses to some extent the later effects of concentration problems by limiting the hypothetical worker to simple, routine work with limited stress. But it does not seem to specifically address the frequency of how often that worker would be unable to concentrate. Moreover, evidence in the medical record supports Plaintiff's contention that the frequency in

---

[9] *See also*, *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), holding that the ALJ had included the following limitations in the hypothetical: "no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls," which the Court felt failed to "take into account the ALJ's own observation (both in her opinion and in the PRTF) that [claimant] often suffered from deficiencies in concentration, persistence, or pace." *McGuire v. Apfel*, 1999 WL 426035, at *15 (D. Ore. 1999), held that "simple work" was insufficient to describe claimant's deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner). *Keyser v. Barnhart,* No. 03-60078 (E.D. Mich., Sept. 2, 2004) (unpublished), held that a hypothetical question of "unskilled jobs with a low stress level alone" is not sufficient to accommodate a claimant who, under the Commissioner's new regulations, has "moderate limitations with respect to concentration, persistence or pace."

14

which Plaintiff must perform is directly relevant to her limitations.  Dr. Kaul found that Plaintiff was capable of unskilled work *given* appropriate breaks and adequate pacing (R. 169).

Given the ALJ's hypothetical question, VE Shaner stated that there were jobs at all exertional levels that were compatible with the limitations and vocational factors that Plaintiff could perform (R. 272).  All of these jobs required the ability to do the work duty eight hours a day, five days a week, or on some kinda of equivalent work schedule (R. 273).  Plaintiff's counsel specifically asked the VE to consider "if 30 percent of the time a person were unable to complete a normal work day and work week without interruptions from psychologically based symptoms, and unable to perform at a consistent pace without an unreasonable number and length of rest periods" (R. 273).  The VE indicated that such a limitation would preclude all competitive employment.  Despite the VE's testimony and an extended discussion between the ALJ and Plaintiff's counsel on the record regarding the ramifications of such a limitation, the ALJ failed to alter her RFC.

"Moderate" concentration problems, even if not severe enough under the regulations to meet the listing of impairments for a finding of disability at Step 3 of the Commissioner's sequential evaluation, need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence, and the inclusion in the hypothetical of simple, routine jobs with a low stress level alone is not sufficient.  On the present record we do not know how many of the jobs the VE testified were available would be eliminated if Plaintiff's moderate concentration problems were more fully represented in the ALJ's hypothetical to the VE.  Unlike the *Smith* case that excluded jobs with quotas from the hypothetical question, that was not done here.  The inspector and assembler jobs likely would involve certain quotas.

15

Clearly, if the ALJ were to accept that Plaintiff would be unable to work 30 percent of the time, competitive employment would be precluded. Further development of the record is required in order to determine the extent of the effect of Plaintiff's concentration limitations on her vocational base.

*Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), held that after finding reversible error it is appropriate for this Court to remand for an award of benefits only when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher* citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case "all essential factual issues" have been *not* been resolved with regard to impact of Plaintiff's concentration limitations on her vocational capacity. In *Bielat*, this Court remanded for an award of benefits where on cross examination Bielat's counsel got the VE to admit that all jobs would be eliminated if frequent deficiencies of concentration, persistence or pace were found, but in that case, the ALJ had found the Bielat had "marked" limitations in concentration – more severe than "moderate" on the Commissioner's scale which is involved here. Thus, that case represented a stronger case for a remand for benefits.

Nor is the current case one where "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Accordingly, a remand for further administrative proceedings consistent with this Report and Recommendation is necessary.

**III.    EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

Plaintiff introduces evidence submitted first to the Appeals Council, but does not make an argument for remand based on this "new" evidence. Because a remand is required for other reasons, the ALJ can consider any additional evidence she deems material.

## IV.    RECOMMENDATION

For the above stated reasons, **IT IS RECOMMENDED** that Defendant's motion be **DENIED** and Plaintiff's motion be **GRANTED IN PART** and this case remanded for further proceedings consistent with this Report and Recommendation. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

| | |
|---|---|
| Dated: April 30, 2007 | s/Steven D. Pepe |
| Ann Arbor, Michigan | United States Magistrate Judge |

CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: Janet L. Parker, AUSA, Mikel E. Lupisella, Esq., and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606

      s/ James P. Peltier
      James P. Peltier
      Courtroom Deputy Clerk
      U.S. District Court
      600 Church St.
      Flint, MI 48502
      810-341-7850
      pete_peliter@mied.uscourts.gov